**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**OMAR F. MARQUES,**

    **Petitioner,**

    v.

**WARDEN, NOBLE
CORRECTIONAL INSTITUTION,**

    **Respondent.**

**CASE NO. 2:20-CV-1270
CHIEF JUDGE ALGENON L. MARBLEY
Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the Petition, Respondent's Motion to Dismiss, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that the Motion to Dismiss (Doc. 9) be **GRANTED** and that this action be **DISMISSED**.

### I. BACKGROUND

Petitioner challenges his convictions after a jury trial in the Franklin County Court of Common Pleas on kidnapping with sexual motivation specification in violation of Ohio Revised Code § 2905.01, and two counts of rape in violation of Ohio Revised Code § 2907.02. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> I.    Facts and Procedural History
>
> {¶ 2} On April 8, 2016, a Franklin County Grand Jury indicted appellant with one count of kidnapping in violation of R.C. 2905.01 with specification (restraint for the purpose of engaging in sexual activity as defined in R.C. 2907.01), one count of rape in violation of R.C. 2907.02 (vaginal intercourse compelled by force or threat of force), and one count of rape in violation of R.C. 2907.02 (vaginal intercourse when defendant knew or had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired because of a mental

or physical condition or because of advanced age). The charges arose out of an incident with T.D.P. Appellant entered a not guilty plea and proceeded to a jury trial.

{¶ 3} The testimony at trial indicates that on Saturday, November 7, 2015, at about 1:00 p.m., T.D.P. went to a gas station near her home with her dog and purchased a bottle of wine. Prior to the purchase, she had consumed a couple glasses of wine, but she testified she was not intoxicated. Next door to the gas station was a house. On previous walks with her dog over the past few months, T.D.P. had frequently waived a greeting at one or two men if they were out on the porch of the house. On this day, as T.D.P. walked by the house with her dog, appellant came off the porch and came to the fence in front of the lot and asked her how she was doing. T.D.P. had not met appellant before. As a friendly gesture to get to know a neighbor, T.D.P. asked appellant if he wanted to share a glass of wine with her on appellant's porch. Appellant agreed.

{¶ 4} Appellant stated there was a problem with the front door, so they went into the kitchen through the back door to open the wine bottle. Appellant produced a large knife that he stuck into the top of the wine bottle. T.D.P. did not see anyone else in the house. T.D.P. began to feel uncomfortable and went to get her dog. At that moment, appellant knocked her to the floor. T.D.P. got up and appellant knocked her down again. They began to struggle. The struggle went from the kitchen into an adjacent room. Ultimately, appellant held T.D.P. down with one arm and tried to pull her pants down with his other arm. T.D.P. believed that appellant was attempting to forcibly have sex with her and she repeatedly told him no. Appellant was struggling to get T.D.P.'s pants down with one hand, so he took his other arm off T.D.P. to use both hands. T.D.P was then able to grab her cell phone from the pocket of a blue jean jacket she was wearing and called 911. She heard the dispatcher answer, but appellant immediately took the phone from her and apparently ended the call because T.D.P. heard the phone ring back shortly thereafter but she could not answer it. T.D.P. then blacked out.

{¶ 5} When she came to, T.D.P. was in the backyard of the house trying to open a latch on a gate. Although she had her dog, she was disoriented. Her pants were on but not fastened and her underwear was down around her thighs. T.D.P knew she had been assaulted but did not know if she had been raped. She was scared and did not know what to do. When she got out through the gate, she called a friend. The time log on her phone indicated that there was a three-minute timeframe between the call to 911 and the first call to a friend. She then ran home.

{¶ 6} After she was home, T.D.P. made numerous calls to friends and to her son. She was in shock and did not know what to do. Friends encouraged her to report the incident to the police and not to change her clothes. When she went to the bathroom, she could smell what she believed was sperm. That further prompted her to want to call the police. Nevertheless, it took her until the next day to get brave

2

enough to report the attack to the police. During her testimony, T.D.P., identified appellant as the person who attacked her.

{¶ 7} Columbus Police Officer Jennifer Mancini testified that on November 8, 2015, she responded to a report of a sexual assault. Mancini met T.D.P. at her home. Mancini stated that T.D.P. appeared to be in shock. T.D.P. told Mancini that she believed she was sexually assaulted the day before and that she was still wearing the same clothes that she wore at the time of the attack. T.D.P. agreed to go to the hospital to be examined for a rape kit. T.D.P. also told Mancini that she had called 911 during the attack. Mancini verified that T.D.P.'s phone recorded a call to 911 at 1:05 p.m. the previous day. Mancini drove T.D.P. to Grant Hospital. On the way to the hospital T.D.P. pointed out the house where the attack occurred. Upon arriving at the hospital they were met by detectives of the Columbus Police Department who took over the investigation.

{¶ 8} Allison Fish, a licensed sexual assault nurse, testified that she examined T.D.P. on November 8, 2015. Between the time of the attack and the examination, T.D.P. indicated that she had gone to the restroom several times and had wiped. T.D.P. reported to Fish that on the previous day she had been sexually assaulted and thrown to the floor. She also reported that she fought with the attacker. T.D.P. indicated she had bruises from the attack and was sore.

{¶ 9} Fish documented that T.D.P. had bruising and scrapes to her left knee, a bruise on her left calf, a scrape to her right knee, a bruise to her left posterior thigh, a bruise to her right posterior thigh, and a scrape to her left upper back. Fish's examine [sic?] did not reveal physical trauma to T.D.P.'s vagina. However, Fish indicated that the absence of physical trauma to the vagina does not mean that penetration did not occur as penetration often occurs without any signs of trauma because the vaginal tissue stretches.

{¶ 10} As part of the rape kit, Fish collected vaginal, anal, perianal, and oral swabs from T.D.P., as well as material from her fingernails. Fish also collected T.D.P.'S underwear. Fish testified that it is important to collect the underwear because fluids from the vagina, including semen, can pool in the underwear. Fish further stated that it would not be surprising for a vaginal swab to be negative for semen, but the underwear positive, especially if the woman has gone to the bathroom and wiped afterward.

{¶ 11} Columbus Police DNA analyst Miranda Aufiero testified that she tested T.D.P.'s underwear and found the presence of semen.

{¶ 12} Columbus Police DNA analyst Jessica Damon testified that she analyzed five items collected from T.D.P.: vaginal swabs, perianal swabs, fingernail swabs, a cutting from a stain in the crotch of underwear, and a cutting from near the waistband of her underwear. Her analysis indicated that a quantity of male DNA was detected from the vaginal swabs, fingernail swabs, and both cuttings from the

3

underwear. Spermatozoa were microscopically observed on the cuttings from the underwear. DNA testing of the underwear cuttings and fingernail material established a match with appellant's DNA profile.1 Although some male DNA was detected on the vaginal swabs, the quantity was too low to yield a specific profile.

{¶ 13} After the state rested its case, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court denied the motion. Appellant rested without calling any witnesses.

{¶ 14} Based upon the evidence presented, the jury found appellant guilty of all three counts. The trial court merged the counts for purposes of sentencing. The state elected to proceed to sentencing as to Count 2 only. The trial court sentenced appellant accordingly.

{¶ 15} Appellant appeals assigning the following error:

The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One[,] Section Ten of the Ohio Constitution by finding him guilty of rape and kidnapping as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

*State v. Marques*, 10th Dist. No. 17AP-849, 2019 WL 158151, at *1-3 (Ohio Ct. App. Jan. 10, 2019). Petitioner apparently did not file an appeal to the Supreme Court of Ohio.

Instead, on July 10, 2019, Petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 8, PAGEID # 161). On October 8, 2019, the appellate court denied the Rule 26(B) application as untimely. (PAGEID # 192). On January 21, 2020, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. (PAGEID # 233).

On March 5, 2020, Petitioner executed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1, PAGEID # 3). He asserts that he was denied the effective assistance of appellate counsel (claim one); that he was denied a fair trial when the trial court permitted admission of statements and DNA evidence that it had previously held would be inadmissible (claim two); and that the evidence is constitutionally insufficient to sustain his

4

convictions (claim three). It is the Respondent's position that this action should be dismissed as barred by the one-year statute of limitations, unexhausted, or procedurally defaulted.

## II.     EXHAUSTION

Respondent argues that Petitioner's sufficiency of the evidence claim is unexhausted. (Doc. 9 at 24-27).

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

In Ohio, this exhaustion requirement includes the filing of a motion for leave to file a delayed appeal to the state court of appeals or to the Supreme Court of Ohio if the time for filing a notice of appeal as of right in a felony case has expired. *See* Ohio Sup.Ct. R. 7.01(A)(4). Because Petitioner did not pursue either a direct or a delayed appeal to the Supreme Court of Ohio, his claim of constitutional insufficiency of the evidence remains unexhausted.

Moreover, the fact that one of Petitioner's claims is unexhausted has consequences for the entire Petition. This is so because federal courts may not entertain "mixed petitions," *i.e.*, petitions that present both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). Federal courts may stay a mixed petition in order to permit the petitioner to present his unexhausted claim to the state courts, and then to return to federal court for review of all, now exhausted, claims. *Rhines v. Weber,* 544 U.S. 269 (2005). But stays under these circumstances should be granted

only sparingly; stays are not appropriate, for example, when the unexhausted grounds are plainly meritless. *Id*. at 278. A petitioner seeking a stay to permit the exhaustion of an unexhausted claim must demonstrate both good cause for having failed to exhaust his state court remedies and a potentially meritorious claim. *Id*. at 277–78.

Petitioner has failed to do so here. A motion for delayed appeal would have little, if any, likelihood of success. Under these circumstances, a stay would not be warranted. *See Hunter v. Warden, Ross Corr. Inst*., No. 2:16-cv-506, 2017 WL 1957794, at *5 (S.D. Ohio Apr. 24, 2017) (citing *Williams v. Thaler*, 602 F.3d 291 (5th Cir. 2010) (When a petitioner is "procedurally barred from raising [his] claims in state court," his "unexhausted claims are plainly meritless.")). Thus, this entire action is subject to dismissal with prejudice.

Further, as explained below, the record reflects that the one-year statute of limitations bars review of all of Petitioner's claims.

## III. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d). The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>   (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.*

Petitioner's judgment of conviction became final under the provision of § 2244(d)(1)(A) on February 24, 2019, forty-five days after the appellate court's dismissal of the appeal when the time period expired to file a timely appeal with the Supreme Court of Ohio. *See Anderson v. Brunsman*, 562 F. App'x 426, 429 (6th Cir. 2014) (citing *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("[W]here a habeas petitioner fails to timely seek review of a state appellate court decision, the conviction is final when the time period for filing that appeal expires.")). *Id*. at 519; *Smith v. ODRC,* 331 F. Supp.2d 605, 613 (N.D. Ohio 2004) (citing *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000)). The statute of limitations began to run on the following day, and expired one year later, on February 25, 2020.

Yet Petitioner waited until March 5, 2020, to execute this habeas corpus petition. Further, his Rule 26(B) application, dated July 10, 2019, did not toll the running of the statute of limitations because the state courts denied that action as untimely. *See Pace v. Guglielmo*, 544 U.S. 408, 417 (2008) ("[T]ime limits, no matter their form, are 'filing' conditions," and where the state court rejects a post conviction or collateral action as untimely, it is not "properly filed" so as to toll the running of the statute of limitations under § 2244(d)(2); *Peyton v. Warden, Franklin Med. Ctr.*, No. 1:18-cv-684, 2019 WL 3892432, at *4 (S.D. Ohio Aug. 16, 2019).

The appellate court alternatively dismissed the Rule 26(B) application as meritless. (*Memorandum Decision*, Doc. 8, PAGEID # 196). Petitioner argues that this alternative ruling tolled the running of the statute of limitations under 28 U.S.C. 2244(d)(2). (*Reply*, Doc. 10). The

7

Court is not so persuaded. A state court's alternative ruling on the merits does not forgive the waiver of a claim as untimely. *See Allen v. Warden*, *Toledo Corr. Inst.*, No. 2:12-cv-154, 2012 WL 6114742, at *52 (S.D. Ohio Dec. 7, 2012) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003)). Thus, "even where the state appellate court 'bases its ruling both on the merits and alternatively on a procedural ground, the procedural ground ruling prevails.'" *Brisco v. Pickaway Corr. Inst.*, No. 2:18-cv-01550, 2019 WL 1512543, at *1 (S.D. Ohio Apr. 8, 2019) (quoting *Brinkley v. Houk*, 866 F. Supp. 2d 747, 779 (N.D. Ohio 2011)). Applying that rule here, this action remains time barred.

Moreover, Petitioner does not allege, and the record does not reflect any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that, to obtain equitable tolling of the statute of limitations, a litigant must establish that he has been diligently pursuing relief and that some extraordinary circumstance stood in his way of timely filing) (citing Pace, 544 U.S. at 418).

Therefore, this action is untimely and subject to dismissal.

## IV. RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that the Motion to Dismiss (Doc. 9) be **GRANTED** and that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

8

made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date:  July 16, 2020                                  /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE